DAVID B. SHANIES LAW OFFICE
David B. Shanies
Joel A. Wertheimer
411 Lafayette Street, Sixth Floor
New York, New York 10003
(212) 951-1710 (Tel)
(212) 951-1350 (Fax)
*david@shanieslaw.com*
*joel@shanieslaw.com*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JOEL UVILES, *on behalf of himself and all others similarly situated*,<br><br>        Plaintiff,<br><br> — against —<br><br>THE CITY OF NEW YORK and ANTHONY J. ANNUCCI, Acting Commissioner for the New York State Department of Corrections and Community Supervision,A *in his official capacity*,<br><br>        Defendants. | JURY TRIAL DEMANDED<br><br>Index No. 19-CV-3911<br><br>**CLASS ACTION COMPLAINT** |

## PRELMINARY STATEMENT

1. New York City and State have created and maintain an unlawful system of "parole holds" – detainers lodged in a computer system, without legal authority, to prevent the release of individuals under State post-release supervision (including presumptive release, parole, and conditional release – collectively referred to herein, for simplicity's sake, as "parole") from New York City jails.

2. Hundreds, if not thousands, of New Yorkers have spent days and nights wrongfully incarcerated because of the parole "hold" system, in violation of the United States Constitution and New York law.

1

3. As a matter of course, when parolees are arrested on other grounds, parole officers do not follow New York Executive Law § 259-i, which requires: (a) issuance and execution of a parole warrant; (b) that the agency detaining the parolee be in possession of the warrant; (c) delivery to the parolee of written notice of a time and place of a preliminary hearing within three days; and (d) a preliminary hearing on the violation within fifteen days of the execution of the warrant.

4. Instead, the City and State have developed an illegal system whereby parole officers request that the City place a "hold" on the parolee – *i.e.*, the State simply asks the City to detain specified individuals, without following the legal procedures required to detain a person for an alleged parole violation.

5. It is the policy, custom, and practice of the New York City Department of Correction ("DOC") to honor those "holds," despite their lack of a judicial basis or legal authority.

6. Making matters worse, cancelation of these extrajudicial "holds" by the State often takes days or weeks, even where no valid warrant ever existed.

7. As a result of these policies, customs, and practices, hundreds if not thousands of New Yorkers have been held in jail unlawfully.

8. Named Plaintiff Joel Uviles was one of those New Yorkers.

9. After Mr. Uviles was arrested on groundless charges that were later dismissed, his parole officer lodged a parole "hold" against him with DOC, in accordance with the State and City's policy, custom, and practice.

10. Even after posting bail, and despite his repeated protestations that his incarceration was unlawful, Mr. Uviles sat on Rikers Island for eighteen days on the basis of the

illegal parole "hold" lodged against him, violating his rights under the United States Constitution and state law.

11. DOC has a policy, custom, and practice of honoring parole "holds," without verifying the validity – or even the existence – of any underlying warrants or determining whether parolees have been granted the process they are due from the State.

12. Post-release or parole supervision affords more than 45,000 New Yorkers the ability to rejoin their communities rather than languish in prison.

13. The freedom enjoyed by individuals on parole is a liberty interest protected by the United States Constitution and has been recognized as such in this Circuit repeatedly.

14. The New York State Department of Corrections and Community Supervision ("DOCCS"), DOC, and their employees, routinely disregard that liberty interest.

15. New York State reincarcerates parolees at a rate of 15 for every 100 parolees each year, one of the highest rates in the nation.

16. New York State's high rate of reincarceration of parolees reflects policies, customs, and practices involving deliberate indifference to the rights of parolees, as evidenced in this case.

17. Parolees in New York City who are arrested and taken to Rikers Island or other DOC facilities frequently find themselves incarcerated beyond the point where they are legally permitted to be held under the terms of their parole and the United States Constitution.

18. Even where all conditions of release have otherwise been met – such as posting bail – local jails will not release individuals who have "holds" lodged against them.

19. No system exists, at the local jails or at the Board of Parole, to effectively make and communicate assessments of State and City officials' legal authority to detain parolees.

20. Days, weekends, and weeks of incarceration often pass for individuals who are legally entitled to their freedom because the City and the State do not and will not rectify their broken system, nor do they care to.

21. The system has led to hundreds, if not thousands, of days of freedom lost by New Yorkers who trying to rebuild their lives after incarceration.

22. This action seeks to end the City and State's unlawful policies, customs, and practices; and to provide just compensation for Mr. Uviles and the class's losses of liberty.

## JURISDICTION AND VENUE

23. This action arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983; and New York State law.

24. The Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Mr. Uviles and the Class's claims arise under the laws of the United States, namely 42 U.S.C. § 1983, and seek redress for the deprivation, under color of state law, of rights guaranteed by the Constitution of the United States.

25. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

26. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant City of New York resides in this judicial district, the State of New York (the party in

interest for official capacity claims asserted against Defendant Annucci) resides in this judicial district, and the claims arose in this judicial district.

## **JURY DEMAND**

27. Mr. Uviles and the putative class demand a trial by jury for all legal claims asserted in this action.

## **PARTIES**

28. Plaintiff Joel Uviles is a citizen of the United States residing in Brooklyn, New York.

29. The putative class consists of all persons who were deprived of their liberty solely on the basis of unlawful post-release supervision (or parole) "holds" requested by DOCCS and communicated to DOC, from three years preceding the commencement date of this action to present.

30. Defendant City of New York is a municipal corporation that, through DOC, operates jails that detain, among others, persons alleged to have violated parole conditions.

31. Defendant Anthony J. Annucci is the Acting Commissioner of DOCCS, and is sued in his official capacity, solely with respect to claims for equitable relief set forth below.

## **FACTS**

32. On December 21, 2017, Mr. Uviles was released on parole. He is under parole supervision in New York State until December 21, 2020.

33. After his release on parole, Mr. Uviles began rebuilding his life. He entered into anger management and substance abuse counseling.

34. Mr. Uviles had been working to obtain employment in the construction industry. He is now gainfully employed and is getting a degree in construction management from Pratt Institute.

35. On May 22, 2018, Mr. Uviles was arrested and taken to Rikers Island based on felony charges filed in New York State Supreme Court for Kings County.

36. Mr. Uviles was innocent of the alleged crimes and the charges were ultimately dismissed in their entirety.

37. On or about May 22, 2018, a parole "hold" was placed on Mr. Uviles by his parole officer.

38. A parole "hold" is an informal detainer, not prescribed by law, whereby a member of DOCCS communicates to another agency, such as DOC, a request to hold in custody a parolee whose parole DOCCS is considering revoking, but for whom DOCCS has not begun complying with the law governing parole revocation.

39. Proper revocation begins with issuance of a warrant; execution by a party in possession of the warrant; and service of written notice of a date, place, and time for a preliminary hearing within three days under New York State Executive Law § 259-i. Thereafter, a preliminary revocation hearing must take place within fifteen days of the initial execution of the warrant.

40. Parole "holds" are routinely recorded in DOC's computer system, ensuring that an inmate for whom a "hold" is noted will not be released, even where all other conditions of release are satisfied.

41. On May 25, 2018, Kings County prosecutors dismissed all felony charges against Mr. Uviles, who continued to be held on misdemeanor charges.

42. On June 10, 2018, Mr. Uviles's parole officer visited him at Rikers Island. She informed Mr. Uviles that she planned to lift the parole hold placed against him.

43. On June 11, 2018, Mr. Uviles attended a hearing in Kings County Criminal Court. The judge set bail, and the requisite bail was paid that same day.

44. Once the bail was paid, no legal basis existed for continuing to incarcerate Mr. Uviles.

45. To detain a parolee under Executive Law 259-i, the party holding the parolee must possess the parole warrant, and the parolee must be served with written notice of a date, place, and time for a preliminary hearing on parole revocation.

46. Rikers did not possess a parole warrant and Mr. Uviles was never served with such notice.

47. Despite having legal entitlement to his freedom on June 11, 2018, Mr. Uviles spent the next eighteen days incarcerated at Rikers Island.

48. Each day, Mr. Uviles asked corrections officers at Rikers Island why he remained incarcerated despite there being no legal justification for him to be there. DOC staff repeatedly told Mr. Uviles that their computer system indicated there was still a parole "hold" on him, and that pursuant to DOC policy, they could not release him.

49. While incarcerated under the unlawful parole "hold," Mr. Uviles was pepper sprayed during an incident involving officers and other inmates in his housing unit. Mr. Uviles was placed in "lockdown," and while on "lockdown" he was not allowed to receive medical attention or communicate with his attorneys.

50. While incarcerated under the unlawful parole "hold," Mr. Uviles repeatedly spoke to his parole officer and her supervisor, asking why he had not been released.

51. Mr. Uviles's parole officer informed him that she had written to the Parole Board in Albany, asking them to remove the "hold," but that once she had done that, it was out of her control.

52. Mr. Uviles's defense attorney, Scott Hechinger, repeatedly contacted both DOC and DOCCS by phone, demanding that they release Mr. Uviles from Rikers Island. On June 22, 2018, he submitted that request in writing.

53. Mr. Hechinger spoke by phone to a number of DOCCS employees in Albany, one or more of whom informed Mr. Hechinger that Mr. Uviles's parole "hold" had not been lifted on account of lost paperwork and a DOCCS employee's vacation.

54. On June 25, 2018, Mr. Hechinger spoke by phone to a DOCCS employee who promised to send appropriate paperwork to DOC to vacate the "hold" and allow Mr. Uviles to be released. Mr. Uviles was not released, however.

55. On June 27, 2018, Mr. Hechinger spoke by phone to a Bureau Chief at DOCCS, who indicated that Mr. Uviles should have been released weeks earlier.

56. Finally, on June 29, 2018, Mr. Uviles was released from detention on Rikers Island.

57. DOCCS employees have informed the Parole Revocation Unit of the Legal Aid Society of New York City that in cases where DOCCS makes a determination not to revoke an individual's parole, the State and City typically take around one week to remove the parole "hold" from an individual's file.

58. Parole "holds," as opposed to parole warrants and written notice of a hearing, hold no valid legal status.

59. Mr. Uviles never received written notice of a hearing, let alone an actual hearing, regarding his parole status. DOC never received a warrant authorizing his detention.

60. Accordingly, the State and City had no valid legal basis for detaining Mr. Uviles. Nevertheless, they continued to hold him.

61. DOCCS and DOC maintain a system of parole "holds" that evades the procedures set forth under New York State law and required under the United States Constitution.

62. In a parole over-detention case entitled *McDay v. Travis*, the City admitted that, as a matter of policy, custom, and practice, the City took no steps to confirm that parole detainers for inmates in the City's custody are executed in accordance with New York law and constitutional due process requirements.

63. In *McDay*, the City argued that it could not be liable for detaining a person based on a parole warrant as long as the warrant was "facially valid." A City representative in that case swore by affidavit that the City only releases parole violation detainees in its custody where the State instructs it to do so.

64. The Second Circuit, in rejecting the City's argument, made clear that this practice is illegal and unconstitutional. The Circuit wrote in *McDay* that "we are aware of no legal authority – and the City has cited none – suggesting that a municipality may not be liable for detaining a parolee on the basis of a parole warrant that is 'facially valid,' but is in fact void as a matter of law." *McDay v. Travis*, 303 F. App'x 928, 931 (2d Cir. 2008) (summary order).

65. Even where the City may have been in possession of a parole warrant, in cases where the parolee does not receive a hearing within fifteen days, such warrant "cease[s] to be 'facially valid.'" *Id.*

66. Regrettably, *McDay* and similar decisions have not changed the City's policies, customs, and practices for detaining inmates on alleged parole violations.

67. DOC continues to detain inmates without legal justification pursuant to nonexistent or invalid parole "holds," causing the unlawful overdetention of parolees.

68. DOC is deliberately indifferent to the rights of parolees to be free from unlawful detention and detention without due process of law, by maintaining a policy, custom, and practice of imprisoning parolees on legally invalid parole "holds" regardless of whether the requirements of New York law and the United States Constitution are satisfied, namely: (a) that the relevant parole warrants be delivered to DOC; (b) that parolees be given written notice of a date, place, and time for a preliminary revocation hearing; and (c) that parolees in fact receive a hearing within fifteen days of execution of the warrant.

69. DOCCS knowingly participates in this scheme, issuing "holds" for parolees with the knowledge that DOC will honor their requests regardless of their validity.

70. DOCCS, as a matter of policy, custom, and practice, causes parole "holds" to be communicated to DOC for the purpose and with the intent of causing the detention of the specified individuals.

## CLASS ALLEGATIONS

71. Mr. Uviles is not alone in being improperly detained on a parole "hold" in DOC custody.

72. Advocates for individuals in the New York State parole system report that they receive calls on a weekly basis from parolees held in DOC custody for alleged parole violations but without a legal basis for the detention.

73. Parolees are regularly detained for parole "holds" in cases where: (a) DOCCS never issues a parole warrant; (b) DOC is never delivered a parole warrant; (c) the parolee is not given written notice of a preliminary hearing within three days; and/or (d) the parolee is not given a hearing within fifteen days.

74. Over the past three years, hundreds of individuals have been unlawfully detained in DOC custody under the circumstances described above.

75. The use of parole "holds" in this unlawful manner is authorized under DOCCS and DOC's respective policies, and such use is so pervasive as to constitute a custom and practice with the same effect as a formal policy.

76. Cancelations of parole "holds" take, at a minimum (according to DOCCS itself) five days, even where a parole officer has notified her superiors that the individual should no longer be held in jail.

77. These complete failures are policies or *de facto* policies, customs, and practices which violate the Fourth, Fifth, and Fourteenth Amendment rights of all Class members.

78. Mr. Uviles's claim is typical of the Class. He, like all others in the Class, was deprived of his liberty solely on the basis of an invalid parole "hold" that DOCCS lodged with DOC. He and all members of the class were held beyond the time that was legally permissible, and suffered damages accordingly.

79. Because the individuals composing the proposed Class number in the hundreds, their claims are too numerous to manage in separate actions.

80. Mr. Uviles will adequately protect the interests of all Class members.

81. The issues common to the Class members predominate. Those issues include:

    a. Whether there is a due process right to a determination that one's parole should not be revoked;

    b. Whether the City and the State violated the rights of Class members by detaining them on "holds" without following the procedures dictated by State law and required by the United States Constitution;

    c. Whether the City and State committed the violations alleged according to policies, customs, and/or practices with regard to the Class members;

    d. The extent of monetary damages for the liberty denied; and

    e. Whether prospective injunctive relief is warranted.

82. Mr. Uviles brings this action on behalf of putative Rule 23(b)(2) and Rule 23(b)(3) Classes.

83. The violations suffered by Mr. Uviles are typical of those suffered by the Class, as all members of the Class were subjected to prolonged over-detentions in a New York City jail. The entire Class will benefit from the monetary and equitable relief sought.

84. Mr. Uviles has no conflict of interest with any Class member, is committed to the vigorous prosecution of all claims on behalf of the Class, and will fairly and adequately protect the interests of the Class.

85. Proposed class counsel are competent in federal civil rights litigation and in class action litigation. The David B. Shanies Law Office is a law firm based in New York City with extensive experience in complex civil rights litigation. Its attorneys have vast experience in both civil rights and class action litigation.

86. This class action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all Class members is impracticable. The damages

suffered by members of the Class, although substantial, are small in relation to the extraordinary expense and burden of individual litigation and, therefore, it is highly impractical for such Class members to attempt individual redress for damages.

87. Injunctive relief granted in this action would necessarily apply to all parolees as the City and State's policies apply to all parolees.

88. There will be no extraordinary difficulty in the management of this Class action as the calculation of the amount of liberty lost for each putative Class member will dictate the award of money damages.

**FIRST CAUSE OF ACTION**

**42 U.S.C. §1983 – Against All Defendants**
**Due Process, Deliberate Indifference, and Unlawful Detention**
**(U.S. Constitutional Amendments IV, V, and XIV)**

89. Each and every allegation contained in the foregoing paragraphs of this complaint is realleged with the same force and effect as though set forth herein.

90. City and State administrators, policymakers, supervisors, and employees caused the unjustified overdetention of Mr. Uviles and all other members of the Class through deliberate indifference to the risk of constitutional injury from over-detention, arising from, *inter alia*: (a) detaining parolees without valid parole warrants; (b) failure to track the legal validity of parole warrants; (c) failure to cancel parole detainers in a timely manner; (d) failure to communicate detainer cancelations in a timely manner; and (e) detention of parolees past the point where such detention is lawful, either because DOC was not delivered a parole warrant, the parolee did not receive hearing notice within three days, and/or the parolee did not receive a hearing within fifteen days.

91. City and State administrators caused over-detention through their failure to provide due process as required under the Fifth and Fourteenth Amendments to the United States Constitution.

92. The governmental detention of individuals without lawful authority violates their rights under the Fourth Amendment to the United States Constitution.

93. Defendants' policies, customs, and/or practices of maintaining parole "holds" in a computer system without regard to the underlying validity of parole warrants or the process due to parolees caused Mr. Uviles's and the Class members' overdetention.

94. Mr. Uviles and Class members suffered losses of liberty as a result of the failures.

## SECOND CAUSE OF ACTION

**False Imprisonment – Against Defendant City of New York**

95. Each and every allegation contained in the foregoing paragraphs of this complaint is realleged with the same force and effect as though set forth herein.

96. Defendant City, through its officials, employees, agents, servants, and/or representatives, intentionally caused the confinement of Mr. Uviles and all other members in the custody of DOC for an unreasonable amount of time.

97. Mr. Uviles and all other members of the Class were conscious of said confinement.

98. Mr. Uviles and all other members of the Class did not consent to the confinement.

99. The confinement was not privileged by any judicial authorization.

100. The City is responsible for the tortious conduct of its employees and agents under *respondeat superior*.

## THIRD CAUSE OF ACTION

### Negligence – Against Defendant City of New York

101. Each and every allegation contained in the foregoing paragraphs of this complaint is realleged with the same force and effect as though set forth herein.

102. The City of New York owes a duty to those incarcerated in its correctional facilities to exercise reasonable care to ensure that they are detained lawfully.

103. The City breached that duty by maintaining either no system or an insufficient and flawed system for tracking the validity of warrants, "holds," and detainers for Mr. Uviles and the members of the Class.

104. As a result, Mr. Uviles and the members of Class suffered losses of their liberty.

## DEMAND FOR RELIEF

1. Declaratory relief and a permanent injunction, declaring unlawful and enjoining the City and State's policies, customs, and practices authorizing incarceration of parolees without valid parole warrants and adherence to the legal and constitutional requirements for detention of persons for alleged parole violations;

2. An order certifying this suit as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3);

3. Compensatory damages against Defendant City of New York in an amount to be proven at trial, together with interest as allowed by law;

4. An order awarding reasonable attorneys' fees, together with the costs and disbursements of this action, pursuant to 42 U.S.C. § 1988; and

5. Such other and further relief that may be just and proper.

Dated: July 8, 2019
New York, New York

DAVID B. SHANIES LAW OFFICE LLC

By: /s/ Daniel B. Shanies

David B. Shanies
Joel A. Wertheimer
411 Lafayette Street, Sixth Floor
New York, New York 10003
(212) 951-1710 (Tel)
(212) 951-1350 (Fax)

*Counsel for Plaintiff and
Proposed Class Counsel*