```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
JOEL UVILES, on behalf of himself and all others                  :
similarly situated,                                               :
                                                                  :   MEMORANDUM DECISION
                                        Plaintiff,                :   AND ORDER
                                                                  :
                  - against -                                     :   19-cv-3911 (BMC)
                                                                  :
CITY OF NEW YORK and ANTHONY J.                                   :
ANNUCCI, Acting Commissioner for the New                          :
York State Department of Corrections and                          :
Community Supervision, in his official capacity,                  :
                                                                  :
                                        Defendants.               :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff, a parolee who was allegedly placed on a warrantless parole "hold" for eighteen days, brings this § 1983 suit against the City of New York and the Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"). The complaint alleges that the hold was carried out pursuant to policies, customs, and/or practices that violate the Fourth, Fifth, and Fourteenth Amendments. Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because plaintiff was being held pursuant to a parole warrant, and any failure of process under New York State law cannot fairly be traced to the alleged parole hold policies or customs, defendants' motions to dismiss are granted.

## BACKGROUND

### I. Plaintiff's Incarceration

As alleged in the complaint, plaintiff was on parole when he was arrested and taken to Rikers Island based on felony charges filed in state court. On the day of the arrest, May 22,

2018, plaintiff's parole officer placed him on a parole "hold," which, as described by plaintiff, is "an informal detainer, not prescribed by law, whereby a member of DOCCS communicates to another agency . . . a request to hold in custody a parolee whose parole DOCCS is considering revoking, but for whom DOCCS has not begun complying with the law governing parole revocation."

Three days after plaintiff's arrest, Kings County prosecutors dismissed all felony charges against him, although he was still being held on misdemeanor charges. Sixteen days later, Kings County Court set bail for the remaining charges and the requisite bail was paid that same day. At this point, plaintiff avers, "no legal basis existed for continuing to incarcerate" him. Nevertheless, plaintiff remained in custody on Rikers Island for another eighteen days.

Plaintiff alleges that upon asking corrections officers, each day, why he remained in custody, they repeatedly told him that the computer system indicated that a parole hold was still in effect and, therefore, they could not release him. During the eighteen-day hold, both plaintiff's attorney and his parole officer contacted various members of DOCCS and the New York City Department of Correction ("DOC") in an attempt to secure plaintiff's release. Although several of these personnel – including the DOCCS Bureau Chief – indicated that plaintiff should have been released upon his posting bail, he remained in detention until the hold was removed.

According to plaintiff, "Rikers did not possess a parole warrant and Mr. Uviles was never served" with written notice of any preliminary hearing on parole revocation for the entirety of his time in lockup.

## II. The Parole Warrant

Defendant Annucci attaches a photocopy of a parole warrant, dated may 22, 2018, to his motion papers. The signed warrant identifies Joel Uviles (NYSID # 09436396H) as a parolee who is believed to have violated his "parole, conditional release or post release supervision." The date on the parole warrant matches the date plaintiff alleges he was arrested and brought into custody.

## III. Parole Holds under DOCCS

Plaintiff's complaint also contains the following representations about the culture of parole holds under DOCCS and DOC: As a matter of course, people arrested while out on parole are not processed in accordance with New York Executive Law § 259-i, which governs the procedure for temporarily or permanently revoking parole. Among those steps the government must take under § 259 are (a) issuing and executing a parole warrant; (b) delivering to the parolee written notice of a preliminary hearing within three days of the warrant's execution; and (c) holding a preliminary hearing no later than fifteen days after the warrant's execution.

Presumably, the rationale for straying from these requirements in cases where a parolee has been arrested is that there is an independent and adequate ground for the incarceration, thus rendering the revocation procedure overkill and the parole hold a convenient substitute. But in situations where this separate ground is suddenly obviated – as in plaintiff's case – a person will remain in custody so long as a parole hold is still in effect because "[i]t is the policy, custom, and practice of [DOC] to honor those 'holds'" until the State authorizes release. These holds often take days or weeks to cancel and DOC usually honors these holds without verifying the existence or validity of an underlying parole warrant.

Ultimately, plaintiff claims that "[h]undreds, if not thousands, of New Yorkers have spent days and nights wrongfully incarcerated because of the parole 'hold' system, in violation of the United States Constitution and New York law." This conclusion is supported by allegations that such holds have previously been criticized by courts in this Circuit,[1] and that "[a]dvocates for individuals in the New York State parole system report that they receive calls on a weekly basis from parolees held in DOC custody for alleged parole violations but without a legal basis for the detention."

Based on the foregoing, plaintiff asserts a claim against both defendants, on his own behalf and on behalf of a proposed class, under 42 U.S.C. § 1983 for violations of their Fourth, Fifth, and Fourteenth Amendment rights. Plaintiff also brings claims for common law false imprisonment and negligence against the City of New York. In bringing these claims, plaintiff seeks (1) declaratory and injunctive relief preventing defendants from issuing or complying with parole holds absent valid parole warrants; (2) compensatory damages against the City of New York for himself and a putative class; and (3) attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

---

[1] See, e.g. McDay v. Travis, 303 F. App'x 928 (2d Cir. 2008).

In analyzing the sufficiency of a complaint, the Court must accept as true all of the well-pleaded allegations contained therein. Iqbal, 556 U.S. at 678. But this tenet "is inapplicable to legal conclusions." Id. Although "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). In addition, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered" on a 12(b)(6) motion. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (*colatus*[2]).

A claim alleging deprivation of constitutional rights under 42 U.S.C. § 1983 requires that a plaintiff demonstrate that the challenged conduct was "committed by a person acting under color of state law," and that the conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). Furthermore, a plaintiff must show that each of the named defendants was personally involved in the wrongdoing or misconduct of which plaintiff complains. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).

Although municipalities are not traditionally considered "persons" against which a plaintiff may seek damages, municipal liability under 42 U.S.C. § 1983 arises when the challenged action was taken pursuant to a municipal policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-95 (1978). Proof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless the incident was the result of an existing, unconstitutional policy or custom. See City of Oklahoma City v. Tuttle, 471 U.S. 808,

---

[2] I.e., edited citation.

5

823 (1985). Specifically, "a plaintiff must allege the existence of a formal policy which is officially endorsed by the municipality, or a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses." Iacovangelo v. Correctional Medical Care, Inc., 624 Fed. App'x 10, 13 (2d Cir. 2015) (citing Jones v. Town of East Haven, 691 F.3d 72, 80-81 (2d Cir. 2012)). As to deliberate indifference, a plaintiff must prove that "a municipal actor disregarded a known or obvious consequence of his action." See Bd. of Cty. Comm'rs of Bryan Cty., Okl. V. Brown, 520 U.S. 397, 410 (1997).

In addition, a plaintiff may seek prospective injunctive or declaratory relief against a state official to challenge "the constitutionality of [the official's] actions in enforcing state law." See CSX Transp., Inc. v. New York State Office of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002) (citing Ex Parte Young, 209 U.S. 123, 154 (1908)). "[I]n determining whether the *Ex Parte Young* doctrine applies to avoid an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Western Mohegan Tribe & Nation v. Orange County, 395 F.3d 18, 21 (2d Cir. 2004) (*colatus*).

This case presents an interesting scenario in that plaintiff plausibly alleges the existence of a custom that may routinely deprive parolees of their constitutional rights, yet has not plausibly established that this custom was the cause of his injury. The most obvious source of this contradiction is the parole warrant Annucci attaches to his motion papers. Because this warrant is integral to plaintiff's complaint, the Court considers it as part of the pleadings.

6

Throughout the complaint, plaintiff stops short of affirmatively alleging that a parole warrant was never issued. To be sure, plaintiff avers that "Rikers did not *possess* a parole warrant" and that he "was never *served* with such notice" of the warrant, but he appears to merely assume that DOCCS failed to execute one at all. Moreover, the accuracy of this assumption was central to the harm plaintiff alleges – that "no legal basis existed for continuing to incarcerate" him once he posted bail. It was also the foundational element of his class claim: that re-arrested parolees are routinely held "without a legal basis for the detention." Because a valid parole warrant evidences such a "legal basis," his claim necessarily fails.

The attached parole warrant notwithstanding, the Court concludes independently that plaintiff did not plausibly allege that he was held in custody without a warrant. Indeed, although the warrant's inclusion in defendants' motion papers confirms this fact, plaintiff failed to "nudge" this indispensable component of his claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Again, plaintiff's allegations amount to a claim that *he never saw* his parole warrant, if it existed at all. That falls short of sufficiently averring the warrant's non-existence.

And to the extent plaintiff maintains that his detention was unconstitutional because he wasn't afforded the notice-and-hearing process required under § 259-i, that argument is inappropriate in the context of the present Monell claim. Even if plaintiff suffered a lack of process under New York law that also amounted to a violation of his constitutional rights, such an injury cannot fairly be traced to the City's custom of honoring parole holds. The existence of the warrant severs the connection between any deficient process and the alleged custom because defendants didn't abide by that custom in this case.

Because plaintiff has failed to state a claim as to his own injury, he lacks standing to maintain his claim for prospective injunctive relief against Annucci on behalf of his proposed class.  See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) ("Plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." (Quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

## CONCLUSION

Defendants' [16, 18] motions to dismiss are granted.  The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　U.S.D.J.

Dated: Brooklyn, New York
　　　　April 20, 2020