UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JOEL UVILES, *on behalf of himself and all others similarly situated*,

                        Plaintiff,

   — against —

THE CITY OF NEW YORK and ANTHONY J. ANNUCCI, Acting Commissioner for the New York State Department of Corrections and Community Supervision, *in his official capacity*,

                       Defendants.

Index No. 19-cv-3911

**OPPOSITION TO DEFENDANTS' MOTIONS FOR <u>SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.  PLAINTIFF'S OPPOSITION TO THE CITY OF NEW YORK'S MOTION ........................ 1

   A.  The City Admits to Its Policy of Deferring to the State, and Its Only Defense Is That It Was Required by the State to Do So .......................................................... 1

   B.  Even if the State's Policy Mandated Detention Without Process, the Mandate Is Unconstitutional and One That the City Consciously Chose to Follow ............................ 6

   C.  The City's Argument that Mr. Uviles Failed to Mitigate His Damages Is Unavailing ...... 8

   D.  That Employees Released Mr. Uviles When the Warrant Lift Was Received Is Evidence of the City's Illegal Policy .................................................................. 10

II. PLAINTIFF'S OPPOSITION TO DEFENDANT ANNUCCI'S MOTION.......................... 10

   A.  Plaintiff's Claims Are Not Moot ...................................................................... 10

   B.  The Cases on Which the State Relies Are Inapposite ....................................... 12

   C.  Annucci's Connection is the Rules, Regulations, and Investment of the State ............... 14

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Albergottie v. City of New York*, No. 08-cv-8331,
   2011 WL 519296 (S.D.N.Y. Feb. 15, 2011) .................................................................. 12
*Armstrong v. Squadrito*,
   152 F.3d 564 (7th Cir. 1998) ........................................................................................... 7
*Bellamy v. City of New York*,
   914 F.3d 727 (2d Cir. 2019) ............................................................................................ 5
*Biediger v. Quinnipiac Univ.*, No. 09-cv-621,
   2010 U.S. Dist. LEXIS 50044 (D. Conn. May 20, 2010) .............................................. 10
*Cage v. Comm'r of Soc. Sec.*,
   692 F.3d 118 (2d Cir. 2012) ............................................................................................ 6
*Coleman v. City of New York*, No. 03-cv-4921,
   2009 WL 705539 (E.D.N.Y. Mar. 16, 2009) ................................................................. 12
*D.S. v. N.Y.C. Dep't of Educ.*,
   255 F.R.D. 59 (E.D.N.Y. 2008) ..................................................................................... 11
*Dodd v. City of Norwich*,
   827 F.2d 1 (2d Cir. 1987) .............................................................................................. 13
*Dudek v. Nassau Cty. Sheriff's Dep't*,
   991 F. Supp. 2d 402 (E.D.N.Y. 2013) ............................................................................. 5
*Eckert v. Equitable Life Assurance Soc'y of the U.S.*,
   227 F.R.D. 60 (E.D.N.Y. 2005) ....................................................................................... 9
*Flores v. Anjost Corp.*,
   284 F.R.D. 112 (S.D.N.Y. 2012) ................................................................................... 11
*Gonzalez v. State of New York*,
   85 N.Y.S.3d 523 (2d Dep't 2018) ............................................................................. 11,12
*Hernandez v. United States*,
   939 F.3d 191 (2d Cir. 2019) ......................................................................................... 7,8
*Jauch v. Choctaw County*,
   874 F.3d 425 (5th Cir. 2017) ........................................................................................ 6,7
*Jeffes v. Barnes*,
   208 F.3d 49 (2d Cir. 2000) .............................................................................................. 6
*Lawson v. Trowbridge*,
   153 F.3d 368 (7th Cir. 1998) ........................................................................................... 8
*Leeward Constr., Inc. v. Sullivan W. Cent. Sch. Dist.*,
   No. 05-cv-8384, 2010 U.S. Dist. LEXIS 49574 (S.D.N.Y. Mar. 10, 2010) .................... 8
*Lifetree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*, No. 14-CV-9075
   (JPO), 2018 U.S. Dist. LEXIS 80928 (S.D.N.Y. May 14, 2018) .................................... 8
*Lopez v. Sessions*, No. 18 Civ. 4189
   (RWS), 2018 U.S. Dist. LEXIS 98712 (S.D.N.Y. June 12, 2018) .................................. 8
*Marinaccio v. Boardman*, No. 02-cv-831,
   2005 U.S. Dist. LEXIS 42417 at *28 (N.D.N.Y. Apr. 19, 2005) .................................. 13
*McDay v. Travis*,
   303 F. App'x 928 (2d Cir. 2008) ..................................................................................... 6

*Morgenstern v. County of Nassau,*
 No. 04-cv-58, 2009 U.S. Dist. LEXIS 116602 (E.D.N.Y. Dec. 15, 2009) ...................... 8
*Morrissey v. Brewer*,
 408 U.S. 471 (1972) ............................................................................................... 13
*Mrs. B. v. Milford Bd. of Educ.*,
 103 F.3d 1114 (2d Cir. 1997) .................................................................................. 6
*N.S. v. Hughes*,
 335 F.R.D. 337 (D.D.C. 2020) ................................................................................ 8
*Oviatt v. Pearce*,
 954 F.2d 1470 (9th Cir. 1992) ................................................................................ 7
*Baker v. McCollan,*
 443 U.S. 137 (1979) ............................................................................................... 7
*United States v. Sykes, No. 17-CR-2009*,
 2017 U.S. Dist. LEXIS 61709 (N.D. Iowa Apr. 21, 2017) ........................................... 6
 *Vives v. City of New York*,
 524 F.3d 346 (2d Cir. 2008) ................................................................................. 5,6
*Warner v. Orange County Dep't of Probation*,
 115 F.3d 1068 (2d Cir. 1996) ................................................................................. 13

## Statutes

42 U.S.C. § 1983 ........................................................................................................ 8
N.Y. Correct. Law § 500-c .......................................................................................... 6
N.Y. Exec. Law § 259-i ............................................................................................. 12
New York City Charter, § 623 .................................................................................... 4
MS Code § 19-25-69 (2016) ....................................................................................... 6

## Rules

Federal Rule of Civil Procedure 34(b)(2)(E) ............................................................. 10
Federal Rule of Civil Procedure Rule 23 .................................................................. 11

## PRELIMINARY STATEMENT

The parties largely agree about the underlying facts of the case, and liability is ripe for adjudication on summary judgment. Plaintiff Joel Uviles was held at Rikers Island for eighteen days beyond when he paid bail. He was entitled to his liberty from the moment he paid bail, and he languished in jail for days after that. In that time, he missed his daughters' school graduations and was pepper sprayed and placed on lockdown because of acts of violence on his jail unit.

Defendants the City of New York and Anthony J. Annucci both treat this state of affairs as unobjectionable. Mr. Uviles's lost liberty, time spent in violent New York City jails, lost days away from his family, and missed days of work are ignored. Mr. Uviles's parole officers at the New York State Department of Correction and Community Supervision ("DOCCS") knew he should be released. New York City Department of Corrections ("NYCDOC") employees knew he was entitled to release. But DOCCS has no self-imposed requirements to act, even as people lose precious days in jail. NYCDOC does not act of its own accord and verify that the people it jails are held on valid legal instruments, instead choosing to defer to DOCCS. It is these policies that must be stopped and remedied by this Court.

## ARGUMENT

I. **Plaintiff's Opposition to the City of New York's Motion**

   A. **The City Admits to Its Policy of Deferring to the State, and Its Only Defense Is That It Was Required by the State to Do So**

Factually, the City of New York does not dispute its policy of deferring to the State for its decision to detain a parolee. Indeed, the City embraces its policy of deference as its defense to Mr. Uviles's claims in this action. The City's only defense to the claims is that it was not an active participant in the decision to detain Mr. Uviles but was instead *required* to detain

1

him per New York State law. No such laws exist. NYCDOC instituted the policy of deference and acted as a policymaker for the City, not the State, when doing so.

"*Monell* liability attaches only where an infringement of constitutional rights is caused by a local government policy." *Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019) (citation omitted). "In searching for the proper local government that is subject to liability on a given *Monell* claim [courts] look for 'those official or governmental bodies who speak with final policymaking authority . . . concerning the action alleged to have caused the particular . . . violation at issue.'" *Id.* (citation omitted). Courts therefore look to the specific functions of municipal policymakers as dictated by state law to determine whether the state had sufficient authority over the specific functions at issue to be considered the final policymaker. *See id.* at 758.

In *Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008), the Second Circuit held that a municipality is not liable under *Monell* if it merely carries out a state law without any "meaningful" or "conscious" choice, because the municipality does not act pursuant to its own policy under such circumstances. *Id.* at 351-53. On the other hand, "the municipality creates such a policy if it makes a 'meaningful' and 'conscious' choice to carry out the law." *Dudek v. Nassau Cty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 411 (E.D.N.Y. 2013) (citing *Vives*, 524 F.3d at 351, 353). For *Vives* to apply as a limit on a municipality's liability under *Monell*, the threshold question is whether the municipality merely carries out a state law or takes actions of its own in creating and instituting the policy. *Id.*

As an initial matter, the City can point to no law requiring it to permanently detain Mr. Uviles without regard to the procedure used by the State. The City's position is that it has no such discretion based, improbably, on a handbook and the testimony of parole officers.

2

(Mem. of Law of the Def. City of New York at 8. (citing N.Y. State Dep't of Corr. and Community Supervision, *Community Supervision Handbook: Revocation*, *available at* https://doccs.ny.gov/community-supervision-handbook/revocation)). The City points to no State laws, no case law, no state regulations, and no agency rulemaking requiring continued detention. The City points to no testimony from a State policymaker to the effect. Instead, the City attempts to weave a mandate out of stray testimony and State website directives. But it cannot point to any statement or mandate from the State that actually requires it to adhere to invalid warrants.

Contrary to the City's argument, the Second Circuit noted in *McDay v. Travis*, 303 F. App'x 928 (2d Cir. 2008), that the City's rules were in tension with State law, "which explicitly denied the City authority to hold [a] plaintiff on th[e] basis [of the warrant] *after the warrant expired*." *Id.* at 932 (emphasis added) (citing N.Y. Exec. Law § 259-i(3)(a)(i)). There, the warrant expired after fifteen days of execution of the warrant without a preliminary hearing, precisely the issue here. Second, the text of Section 259-i(3)(a) of the New York Executive Law is explicit on its face that a parole warrant only justifies *temporary* detention and that certain procedural safeguards must be met to maintain that *temporary detention*. Case law, as detailed in Mr. Uviles's moving brief, holds that where those safeguards are not met, the parolee is entitled to be restored to parole, *i.e.*, granted his liberty. (*See* Mot. for Summ. J. ("Pl. Br.") at 15-16.)

While the State claims in its moving brief that *McDay* does not stand for the proposition that invalidation of parole warrants is not "self-executing," *McDay* stands for precisely that proposition: "If [the preliminary hearing requirement is] not timely met, the parole warrant is rendered void, and the prisoner is entitled to be released." *McDay*, 303 F. App'x at

3

929 (citing *People ex rel. Levy v. Dalsheim*, 66 A.D.2d 827, 828 (2d Dep't 1978), *aff'd*, 48 N.Y.2d 1019 (1980)). Plaintiff has not found any law or regulation requiring the City to honor the State's belief that the invalidation of a parole warrant is not self-executing. Per *Vives*, without a State mandate, the City is making a an active choice.

Indeed, conducting the same analysis as the Circuit undertook in *Vives*, state and municipal law dictate that NYCDOC oversees the custody of its jails, not DOCCS. The New York Correction Law imposes the responsibility to maintain its jail population legally. Section 500-c of the New York Correction Law specifically contemplates whether county jails are responsible for those in their custody and concludes that they are. *See* N.Y. Correct. Law § 500-c. The head of a facility "shall receive and safely keep in the county jail of his county each person *lawfully* committed to his custody" and is *personally* immune from suit "for receiving or detaining any person under and in accordance with a commitment issued by a *judicial officer*; nor shall he, without lawful authority, let any such person out of jail."[1] *Id.* (emphasis added). The New York City Charter is no different. Per Section 623(3) of the New York City Charter, the Commissioner of NYCDOC shall have "[c]harge and management of persons or any other institution of the city placed under his jurisdiction by law." N.Y. City Charter § 623(3).

Accordingly, local officials run local jails and no state law mandates that the official act as an agent of the State in illegally detaining parolees. *Cf. Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (holding that state law puts local officials in charge of the function of local

---

1. Notably, a parole warrant is not a judicial document issued by a judicial officer. It is issued by a DOCCS employee and, like many detainers and warrants, authorizes only temporary detention. It does not privilege detention in the manner considered by Section 500-c(4) of the Correction Law, which does not allow a local correctional institution to release an inmate detained by a commitment issued by a judicial officer. The existence of that mandate can also be read to imply the *lack* of a mandate for non-judicial commitment. *Brennan-Centrella v. Ritz-Craft Corp. of Pa.*, 942 F.3d 106, 111 (2d Cir. 2019) ("As a matter of statutory construction, we presume that the legislature follows the principle of expressio unius est exclusio alterius—that is, 'mention of one impliedly excludes others.'" (quoting *Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996))).

4

jails and that state regulations regarding personnel did not remove local officials' authority over personnel matters). Recently, the Fifth Circuit came to the same conclusion in applying Mississippi's Section 500-c equivalent. There, the local sheriff argued that a policy of indefinite detention on a "capias" warrant, without arraignment, was a "[f]unction[] of state officials" who could not "impute legal duties actionable by federal tort to a county official," because "the truly responsible parties" were the "judges of the circuit court." *Jauch v. Choctaw County*, 874 F.3d 425, 436-37 (5th Cir. 2017). The Fifth Circuit disagreed, finding that the county sheriff was "responsible for those incarcerated in his jail" per Section 19-25-69 of the Mississippi Code, and that the warrants "did not require him to impose the unconstitutional detention policy." *Id.* Notably, the text of Section 19-25-69 reads that the local sheriffs have "charge of . . . the prisoners" in their jail, just as in Section 500-c of the New York Correction Law.

This conclusion is precisely the conclusion that the Court reached in *McDay* – which notably cited *Vives* – where the Court also found that "the City has pointed to no State law or State policy that compelled plaintiff's detention after the dismissal of criminal charges against him." *McDay*, 303 F. App'x at 930. In this case, the City tries and fails to remedy its deficiencies in *McDay* using two sources, neither of which holds water. The City points first to internal directives regarding the policy and then to assertions regarding the law by Plaintiff's parole officers. But the mere assertion by state directives or its employees that a facially valid parole warrant justifies continued detention regardless of procedural safeguards cannot and does not supersede Section 259-i or state and federal case law. DOCCS's internal interpretation of those rules as providing for blanket long-term detention regardless of due process is not a justification for the City to do the same. Directives and guidance cannot overrule state statutes and established case law. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 125 (2d Cir. 2012) ("[A]n

5

unpromulgated internal agency guideline, does not have the force of law and is entitled to deference only insofar as it has the power to persuade." (citing *United States v. Mead Corp.*, 533 U.S. 218, 227-29 (2001); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))). A state handbook and directive that broadly states that a parole warrant permits detention in a local facility until the warrants are adjudicated cannot be read outside of the context of the existing law. Similarly, a state officer's interpretation of the law is not binding on this court and is not entitled to any deference. *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997); *United States v. Sykes*, No. 17-CR-2009, 2017 U.S. Dist. LEXIS 61709, at *19 n.3 (N.D. Iowa Apr. 21, 2017) ("[T]he officer's own legal interpretation of his conduct is not binding on this Court.").

No State law mandated that the City detain Mr. Uviles absent State dictation to do so. The City chose to do so, as a policy, and that policy compelled employees who understood Mr. Uviles as deserving of release to keep him imprisoned. As such, he is entitled to summary judgment and the City is not.

B. **Even if the State's Policy Mandated Detention Without Process, the Mandate Is Unconstitutional and One That the City Consciously Chose to Follow**

Even if there were a State mandate to maintain Mr. Uviles's detention despite there being no due process to maintain such detention, under *Vives*, a policy might be "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Vives*, 524 F.3d at 356 n.8 (citation omitted). Here, the alleged State mandate is one that requires ongoing detention without due process for as long as the State or a court requires. The flaw in this policy is evident even without "reasonable prudence." The City's policymakers simply could have responded to the Court's decision in *McDay* by refusing to maintain the policy of deference.

6

A jailer cannot delegate policymaking authority over determinations regarding the constitutionality of detentions. "Obviously, one . . . could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment." *Baker v. McCollan*, 443 U.S. 137, 144 (1979). Here, the City delegated to the State what was solely within the City's control – determinations about Mr. Uviles's liberty in the face of a now-invalid warrant – and it was such determinations that Plaintiff continually challenged as illegal. *See* Pl. Br. at 16-17 (citing *Hayes v. Faulkner County*, 388 F.3d 669, 674 (8th Cir. 2004); *Armstrong v. Squadrito*, 152 F.3d 564, 578-79 (7th Cir. 1998); *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992)).

Under similar facts in *Jauch v. Choctaw County*, the Fifth Circuit held that *regardless* of the state's purported mandate, the officials in charge of the unconstitutional policy "should have known to put his constitutional obligations ahead of his idiosyncratic understanding of state law requirements." 874 F.3d at 436-37. The *reductio ad absurdum* of the City's argument is that NYCDOC could hold someone for years in its jails on an invalid parole warrant, provided that DOCCS did not provide a warrant lift. But if the City knows that it is holding an individual unconstitutionally and without a judicial order to maintain the detention, then there is no State mandate that can override the City's constitutional responsibilities to release the individual.

Courts in this Circuit have concluded similarly with respect to detainers issued by Immigration and Customs Enforcement ("ICE"), as non-judicial documents that temporarily carry the force of law. In *Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019), the plaintiff accused the City of "blindly honoring federal immigration detainers," *id.* at 206, and maintaining a practice of "treating federal immigration detainers as though they were mandatory," *id.* at 207.

7

The Second Circuit held that "the City could not blindly rely on the federal detainer in the circumstances [t]here." *Id.* at 208; *see also N.S. v. Hughes*, 335 F.R.D. 337, 346 (D.D.C. 2020) ("Despite having been ordered released on his own recognizance—which should have permitted him to leave the courthouse—the Marshals Service shackled N.S. and took him to a cell where he was held for at least two hours while awaiting transfer to ICE. The [Marshals Service] is not ICE's puppet—it acted of its own accord in complying with ICE's request, and defendant's arguments to the contrary are unavailing."). As at least one court in this district has noted, administrative warrants like those issued by ICE raise "serious due process and Fourth Amendment questions." *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 U.S. Dist. LEXIS 98712, at *37 (S.D.N.Y. June 12, 2018). And New York law ostensibly provides due process as required by the Constitution: a prompt hearing, without which the cause to hold the parolee dissipates.

The City cannot blindly rely on parole warrants. The command to detain the parolee is "temporary" in the text of the statute, and requires provision of a hearing within fifteen days. Nothing in State law commands detention beyond fifteen days without the provision of a hearing, and to hold longer without legal privilege is unconstitutional.

C. **The City's Argument that Mr. Uviles Failed to Mitigate His Damages Is Unavailing**

The City contends that Mr. Uviles failed to mitigate his damages by not bringing a habeas corpus petition before a New York court. This argument fails for at least three reasons.

As an initial matter, the question of damages is a question for a jury, and failure to mitigate goes to the extent of damages, not liability. *See Leeward Constr., Inc. v. Sullivan W. Cent. Sch. Dist.*, No. 05 Civ. 8384 (CS)(LMS), 2010 U.S. Dist. LEXIS 49574, at*32 (S.D.N.Y. Mar. 10, 2010).

8

Second, the City did not plead failure to mitigate in its answer to Mr. Uviles's complaint. Failure to mitigate is an affirmative defense that must be pleaded. *See Morgenstern v. County of Nassau*, No. 04-cv-58, 2009 U.S. Dist. LEXIS 116602, at *3-4 (E.D.N.Y. Dec. 15, 2009) ("An 'overwhelming majority of federal courts have decided[] . . . that failure to mitigate damages is an affirmative defense,' and therefore, must be pleaded." (quoting *Eassa v. Hartford Fire Ins. Co.*, No. 90-CV-321, 1991 U.S. Dist. LEXIS 17309, at *22 (N.D.N.Y. Nov. 29, 1991))). "[T]he general rule in federal courts is that a failure to plead [this] affirmative defense results in a waiver." *Id.* (second alteration in original) (quoting *Travellers Int'l, A.G. v. Trans World Airlines*, 41 F.3d 1570, 1580 (2d Cir. 1994)). As such, Defendants cannot raise mitigation at this point.

Third, the City's claim that Mr. Uviles did not attempt to mitigate his damages is belied by the evidence. He consistently worked to secure his release. The City simply objects to the *method* by which he attempted to do so. But drafting a petition for habeas corpus relief, presenting it to a court, and obtaining relief itself takes time. The efforts by Mr. Uviles and his then-attorneys to secure his release through other measures were strategic decisions, not failures to mitigate. Moreover, insofar as mitigation is required under 42 U.S.C. § 1983, the principles of mitigation do not require that "the injured party *actually* mitigate its damages." *Lifetree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*, No. 14-CV-9075 (JPO), 2018 U.S. Dist. LEXIS 80928, at *21 (S.D.N.Y. May 14, 2018). A party must only take "reasonable steps" to mitigate damages from a tort, and Mr. Uviles took such steps here. *Lawson v. Trowbridge*, 153 F.3d 368, 377 (7th Cir. 1998). He had been told by his parole officer that his warrant was in the process of being canceled before he paid bail, which was true. He had every reason to expect that he would be released, and attempting to secure his release on that basis was a reasonable choice.

9

### D. That Employees Released Mr. Uviles When the Warrant Lift Was Received Is Evidence of the City's Illegal Policy

The City repeatedly notes in its motion that NYCDOC employees "expeditiously" released Mr. Uviles when they received the warrant lift from the State. The purported speed with which these employees released Mr. Uviles would be relevant were this case against the City employees, or were Mr. Uviles bringing a case based upon a pattern and practice of deliberate indifference by these employees. He is not. Instead, he has shown that despite knowing he was entitled to release, those employees *could not* release him from Rikers pursuant to NYCDOC policy. This is precisely why Plaintiff sues the City of New York and not the individuals.

## II. Plaintiff's Opposition to Defendant Annucci's Motion

### A. Plaintiff's Claims Are Not Moot

As Plaintiff explained in his opening brief, his claims are not moot provided that he will be able to establish class claims relating back to the filing of the complaint. The State argues that a class certification motion must be filed before a plaintiff's claims become moot. (Mem. of Law in Support of Def. Acting Commissioner Annucci's Mot. for Summ. J. ("Annucci Br.") at 13-14.) "Although many of the cases applying the 'relation back' doctrine have done so after a motion to certify the class has previously been filed, in situations where a plaintiff has not yet had a reasonable opportunity to file a motion for class certification, namely, where there has been no 'undue delay,' the court retains subject matter jurisdiction despite the plaintiff's failure to move for class certification." *Eckert v. Equitable Life Assurance Soc'y of the U.S.*, 227 F.R.D. 60, 63 (E.D.N.Y. 2005) (collecting cases). This is precisely the situation Mr. Uviles faces. There was no undue delay in the class process here. Indeed, it was Defendants who received a stay pending the motion for class certification. Mr. Uviles, in contrast, has moved diligently

10

throughout this process, and the claims are not moot insofar as they relate back to the filing of the complaint.

While Plaintiff did not discuss in his opening brief the grounds for class certification, given the parties' agreement to delay class certification briefing until a decision was rendered on their motions for summary judgment, Plaintiff will briefly address here the State's claims regarding numerosity and the scope of the class.

First, Defendant Annucci complains about the .pdf format of the City's production, citing Federal Rule of Civil Procedure 34(b)(2)(E). Plaintiff has a similar issue with the format but was notably not responsible for the issue, as Defendant City made the production.

Second, while Defendant Annucci is correct that the City's production provides limited information regarding the details of bail payment and waiver of a preliminary hearing, it includes sufficient data establishing other critical facts. Specifically, the City's production establishes (a) that many inmates had warrants lodged against them, (b) that more than fifteen days passed prior to the day their warrants were lifted, and (c) that the parolees were released on the day the warrant was lifted by the State. Essentially, Defendant Annucci argues that the class and numerosity of it are not ascertainable. But a "class is ascertainable if its members can be identified by reference to objective criteria and if such identifications can be made in an administratively feasible manner." *Biediger v. Quinnipiac Univ.*, No. 09-cv-621, 2010 U.S. Dist. LEXIS 50044, at *8 (D. Conn. May 20, 2010) (citing *Taylor v. Housing Auth. of New Haven*, 257 F.R.D. 23, 28 (D. Conn. 2009), *vacated on other grounds*, 267 F.R.D. 36 (D. Conn. Mar. 29, 2010)). With respect to numerosity, "a plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 123 (S.D.N.Y. 2012). A

11

movant "must show some evidence of or reasonably estimate the number of class members," but evidence of the "exact size or identity of class members is not required." *Id.* In *Flores*, the defendants argued that the plaintiff could point only to one person who qualified for the class of tipped employees. But the plaintiff also produced "a spreadsheet created by Defendants which shows that Defendants have employed over 50 tipped employees and over 580 non-exempt employees during the time period of the proposed class." *Id.* at 123-24. Accordingly, the court held that the "spreadsheet is enough to establish numerosity." *Id.* at 124. Upon notice, potential class members who were not released prior to the warrant lift will be able to aver whether they were otherwise entitled to their release.

Moreover, Plaintiff's proposed class with respect to the State pertains to *future* class members who are *currently* under parole even where they have not yet been subject to the failures of the parole warrant policy. "Representation through Rule 23(b)(2) provides an efficient tool to provide relief 'for a numerous and often unascertainable or amorphous class of persons.'" *D.S. v. N.Y.C. Dep't of Educ.*, 255 F.R.D. 59, 65 (E.D.N.Y. 2008) (citing *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58-59 (3d Cir. 1994)). In *D.S.*, the court held that "[p]ast, present, and future minority high school students . . . may appropriately seek institutional change to prevent and remedy serious constitutional violations." *Id.* Similarly, past, present, and future parolees held by NYCDOC are a sufficient class of persons subject to the systemic failures of DOCCS to satisfy the numerosity and ascertainability requirements of Rule 23.

B. **The Cases on Which the State Relies Are Inapposite**

Relying on *Gonzalez v. State of New York*, 85 N.Y.S.3d 523 (2d Dep't 2018), the State argues that the delay in Mr. Uviles's release does not entitle him to bring claims under the Constitution. But the facts of *Gonzalez* demonstrate the opposite. There, a parolee was held on a

parole warrant for seventeen days because the hearing officer misread the date on which the warrant was executed. The State acknowledged the error and then "agreed that the claimant was entitled to an order vacating the parole warrant and restoring him to parole supervision." *Gonzalez*, 85 N.Y.S.3d at 524. The plaintiff in that action then brought a claim against the State for false imprisonment under state law. The court held that because the two-day delay was not the result of malfeasance but because the parties believed the detention and warrant to be valid through the seventeenth day, the detention was privileged. No such mistake existed here. All actors involved, from Mr. Uviles, to the City of New York, to Mr. Uviles's parole officers, knew that the parole hearing had not been given within fifteen days of the execution of the warrant. The parole officers themselves had requested the cancelation of the warrant from the Board of Parole. The warrant, as noted in *McDay*, was no longer facially valid, all parties knew that to be the fact, and yet Mr. Uviles remained detained.

Similarly unavailing is the State's consistent reliance on the existence of probable cause at the time of arrest and execution of the warrant as justification for the prolonged detention without a hearing. Plaintiff is not contesting that reasonable cause existed to issue the warrant. (*See* Annucci Br. at 17 (citing *Albergottie v. City of New York*, No. 08-cv-8331, 2011 WL 519296, at *8 (S.D.N.Y. Feb. 15, 2011); *Coleman v. City of New York*, No. 03-cv-4921, 2009 WL 705539, at *3-4 (E.D.N.Y. Mar. 16, 2009)). It did. Plaintiff contests the State's claim that it is therefore entitled to hold a parolee without a preliminary hearing. Preliminary hearings provide parolees with the opportunity to challenge the probable cause findings, to examine witnesses, and to have, for the first time, a neutral review the evidence of the parole violation. *See* N.Y. Exec. Law § 259-i(3)(c)(iii). Just as a prosecutor could not refuse to provide a trial and continue to detain an individual based upon the initial probable cause for arrest, the parole

13

system cannot justify a continued detention based upon the cause for the initial arrest without process. Without the process due, Mr. Uviles's arrest was not privileged, he was entitled to his release, and the failure to do so caused him constitutional harms.

### C. Annucci's Connection is the Rules, Regulations, and Investment of the State

While a sufficiently close connection between a defendant and enforcement of a government act or policy under *Ex parte Young* is required, "personal involvement" is not. A defendant's "personal involvement" in an alleged constitutional deprivation is a prerequisite for a damages action under § 1983, *Marinaccio v. Boardman*, No. 02-cv-831, 2005 U.S. Dist. LEXIS 42417 at *28 (N.D.N.Y. Apr. 19, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)), but district courts in this Circuit have held "that the personal involvement requirement does *not* apply to bar actions . . . pursuant to § 1983 for injunctive relief against a state official," *id.* (collecting cases). Accordingly, "the court must determine instead whether there is any evidence in the record before it which would create a question of fact as to whether the alleged constitutional violations . . . occurred due to an official policy or custom," such as that of DOCCS. *Id.* at *29.

As Plaintiff argued in his opening brief, DOCCS has control over the rules, regulations, directives, and methods used to cancel and submit for cancelation parole warrants if the required process has not been given to parolees. Plaintiff is not arguing, as Defendant Annucci would have it, for the application of state laws or to compel the State to conform with its laws. (*See* Annucci Br. at 24.) To the contrary, Plaintiff argues that the State laws, policies, regulations, and customs (and lack thereof) foreseeably cause constitutional violations. A state is responsible for maintaining a parole system that meets the requirements of *Morrissey v. Brewer*, 408 U.S. 471 (1972). While Defendant Annucci is correct that the State's statute does not, in

14

itself, create a due process right, *Morrissey* does create a due process right. Mr. Uviles received none of the process due to him under *Morrissey*, and the State's failure to have any laws or processes that mandate a response to those failures caused him to be illegally detained by the City. The State relies on *Morrissey*'s lack of bright line rules on the one hand while arguing this Court cannot legislate for it on the other. *See Morrissey*, 408 U.S. at 488 ("We cannot write a code of procedure; that is the responsibility of each State.") Having created a parole revocation procedure consistent with *Morrissey*, the State's failure to utilize that procedure inevitably leads to violations of *Morrissey*, as it did for Mr. Uviles.

The relief Plaintiff seeks from this Court would be an order requiring the State to adopt procedures, rules, and technologies that provide for the transmission of warrant lifts to local facilities when the State fails to provide the procedure due under *Morrissey*. This Court *can* adopt a rule that the State must have some policy that, insofar as it expects – wrongly – local facilities to hold inmates indefinitely on parole warrants regardless of the constitutional process given, then it must efficiently communicate to the localities that a warrant has been lifted. A "five-to-ten day period" for the cancelation of warrants that are deemed invalid, in addition to a failure to track any potential errors in those cancelations, will foreseeably cause detentions without due process per *Morrissey*. *See Warner v. Orange County Dep't of Probation*, 115 F.3d 1068, 1071 (2d Cir. 1996) (finding that those sued under § 1983 are responsible for the natural consequences of their actions); *Dodd v. City of Norwich*, 827 F.2d 1, 6 (2d Cir. 1987) ("In adopting its policies a municipality must take into consideration the reasonably foreseeable conduct . . . of its own employees.").

15

## CONCLUSION

The evidence clearly establishes Plaintiff was detained due to unlawful policies – and lack thereof – established by the City and State of New York and he is entitled to a trial solely on damages.

Dated:  New York, New York

      May 29, 2021

                                       WERTHEIMER LLC

By: _____
Joel A. Wertheimer
14 Wall Street, Suite 1603
New York, New York 10005
(646) 720-1098
joel@joelwertheimer.com


David B. Shanies Law Office LLC
            By:

_____
David B. Shanies
Deborah I. Francois
411 Lafayette Street, Sixth Floor
New York, New York 10003
(212) 951-1710 (Tel)
(212) 951-1350 (Fax)

16